HERGET, Judge
(dissenting).
Plaintiff, Lumber Mutual Fire Insurance Company, having been subrogated to the rights under a collision insurance policy issued to Consumers Credit Corporation instituted suit against Thomas E. Davidson and his liability insurer Hardware Mutual Casualty Company for damages to its assured’s automobile in the sum of $699.26. The damages arose out of a collision of its insured vehicle with Davidson’s vehicle at the intersection of Robert and Holly Streets in the City of Hammond, Louisiana on July 28, 1959. Defendant, Hardware Mutual Casualty Company, answered the suit denying the allegations of Plaintiff’s petition and, in the alternative, plead contributory negligence on the part of the driver of Plaintiff’s assured’s vehicle thereby barring Plaintiff’s recovery; and, assuming the position of Plaintiff in reconvention, alleged subrogation to the rights of its insured, Thomas E. Davidson, and prayed for damages to Davidson’s vehicle in the sum of $771.74.
The evidence reveals that Mr. Fred G. LeBlanc, Sr. was driving Plaintiff’s insured vehicle west on Robert Street and approached the intersection of Robert and Holly Streets shortly afternoon immediately prior to the collision. The collision occurred when Mr. LeBlanc’s vehicle proceeded into the intersection and struck the right rear door of the vehicle owned and operated by defendant, Thomas E. Davidson, who was proceeding north on Holly Street. From the testimony of Robert L. Edwards, Assistant Chief of Police for the City of Hammond, who did not see the collision but made an investigation immediately subsequent thereto, the day was clear and the streets were dry; Defendant’s vehicle left no skid marks but traveled some 96 feet northwest of the point of collision, the impact having occurred in the northeast quadrant of the intersection; the LeBlanc vehicle was located at the point of collision and there were 27 feet of skid marks attributed by him to this vehicle; neither of the streets, each containing two lanes, is controlled by any traffic signal and the speed limit in the City of Hammond is 25 miles per hour. Upon his investigation he concluded each of the -drivers was exceeding the speed limit at the time of the collision. In this respect insofar as the LeBlanc vehicle was concerned his observation was due to the 27 feet of skid marks together with the statement of Mr. LeBlanc made at that time “ * * * that he wouldn’t say he was doing exactly 25 but maybe doing 30 or 35 * * * ” immediately prior to the collision. His conclusion as to the speed of Defendant’s vehicle was predicated upon a statement allegedly made to him at that time by defendant Davidson “Just flying low, driving too fast, in a hurry to get back up to Independence.” The officer further testi *270 fied that Mr. Davidson assumed full responsibility for the accident because of his gross carelessness and excess rate of speed.
Mr. LeBlanc, testifying on behalf of Plaintiff, stated that he had taken the back street in Hammond to avoid the traffic lights while driving through on his way to Lafayette ; that when he approached the intersection he looked to his right, saw no vehicles approaching and turned to look to the left but did not look fast enough as Defendant’s vehicle was out in front of him and before he could stop he hit him. He further related that he had attempted to brake his car some 125 feet before the impact as estimated by the police; however, when apprised 27 feet was the measurement of the skid marks shown in the report of the officer and queried in respect to whether or not he would care to refresh his memory in the light of said report, he said:
“A. No, for the reason I am saying 125 feet because the idea is that my brakes no doubt weren’t applied tight enough at the beginning to show any skid marks, when I saw I was going to hit that car I really shut down.
“Q. As I understand you now, your testimony is the skid marks were actually 125 feet long?
“A. No, I said I thought that the police officer estimated it, if it is 27 feet then it is 27 feet.”
Defendant Davidson denied making any statement to Officer Edwards other than to say that he was traveling 25 to 30 miles per hour immediately prior to the collision, and as he testified on the trial of the case; that he slowed down at the intersection, observed Plaintiff’s assured’s vehicle being braked, and believing that he had time to proceed through the intersection accelerated his vehicle despite which he was unable to safely traverse the intersection and his car was struck on the right rear door. He specifically denied that he had assumed full blame for the accident.
From the testimony of the witnesses it is evident that on the southeast corner of the intersection there was a building and shrubbery which partially obstructed the view of the respective drivers as they approached the intersection. On this set of facts the Trial Court, for oral reasons assigned, rendered judgment in favor of Plaintiff and against Defendants as prayed for and dismissed the reconventional demand of defendant Hardware Mutual Insurance Company; from which judgment Defendants appealed to this Court.
In the absence of a semaphore or other regulatory traffic signals at this intersection, the right of way is governed by LSA-R.S. 32:237, paragraph A, as follows:
“When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. The driver of any vehicle traveling at an unlawful rate of speed or in an unlawful manner shall forfeit any right of way which he might otherwise have.”
Though Plaintiff under the provisions of the statute quoted supra is accorded the right of way, in interpreting the rights accorded to one in the position of Plaintiff’s assured’s vehicle approaching the intersection and the circumstances under which this collision occurred, the courts have held that such right of way is not absolute but may be forfeited to the driver of a vehicle who has pre-empted the intersection and further the superior right of way afforded to a driver under such circumstances may also be forfeited by negligence on his part in driving at an excessive rate of speed or in failing to maintain a proper lookout. Harris v. Travelers Indemnity Co. of Hartford, Conn., La.App., 70 So.2d 235; Wilson v. Yellow Cab Co. of Shreveport, La.App., 64 So.2d 463; Gayle v. J. Ray McDermott & Co., La.App., 34 So.2d 631. Accordingly, the negligence of Mr. LeBlanc in approaching this intersection at an excessive rate of speed and without having made observation *271 of traffic approaching from his left with his car traveling at a speed that upon his actual observance of the Defendant’s car he was unable to stop, especially where his view of Defendant’s vehicle approaching on the inferior street was impaired, renders him guilty of negligence precluding the right of his subrogee to recover.
The negligence of defendant Davidson consisted of (1) approaching a blind corner at an excessive rate of speed so that he was unable to accord the right of way to vehicles approaching from his right. Mustin v. West, La.App., 46 So.2d 136. (2) Nor can Defendant eliminate his negligence by relying upon the pre-emption of the intersection, for it is settled that to pre-empt the intersection the driver on the inferior street must make his entrance not by hastening to pre-empt the crossing streets or beating the approaching vehicle to entry therein but under circumstances that his entrance in the intersection is made at a time that with normal speed and observing the intervening vehicle at a distance from the intersection his crossing might reasonably be anticipated to be uneventful. Harris v. Travelers Indemnity Company of Hartford, Conn., supra. In the case of Briscoe v. State Farm Mutual Automobile Insurance Company, La. App., 134 So.2d 128, the Court of Appeal, Second Circuit, in construing the pre-emption of an intersection by a vehicle on an inferior street, said:
“ * * * Under the circumstances, Briscoe should have yielded the right-of-way to the vehicle approaching from the right. As pointed out above, in order to legally preempt an intersection, the motorist on the inferior street must enter at a time when he may reasonably expect to clear same without interfering with oncoming traffic. * * * ”
Being of the view, for the reasons stated herein, that this accident must be attributed to the negligence of both drivers, I respectfully dissent from the judgment of the ma-. jority in favor of Plaintiff and against Defendants.