225 So.2d 34 (1969)
Vincent ROUSSELL
v.
Gerald STRUG.
No. 3607.
Court of Appeal of Louisiana, Fourth Circuit.
July 7, 1969.
*35 Drury, Lozes, Young & Curry, James H. Drury, New Orleans, for Gerald Strug, defendant-appellee.
Thomas M. McBride, III, Arabi, and Frank S. Bruno, New Orleans, for Vincent Roussell, plaintiff-appellant.
Before CHASEZ, BARNETTE and LESUEUR, JJ.
CHASEZ, Judge.
This is a suit by plaintiff Vincent Roussell against defendant Gerald Strug for personal injuries and property damage which Roussell allegedly sustained as a result of an automobile accident involving vehicles owned and driven by the two parties. The matter was tried before a jury in the distirct court; the jury found in favor of the defendant and thereafter a judgment was rendered by the trial judge based on its decision, dismissing plaintiff's suit. The plaintiff now takes this appeal.
The accident in question occurred at the intersection of Dumaine Street and Taft Place in the City of New Orleans on February 11, 1966, at approximately 10:00 A.M. Dumaine Street is a two-lane, two-way, favored thoroughfare. Taft Place is also a two-lane, two-way street, however it is controlled by a "Stop" sign at its intersection with Dumaine. Prior to the accident the plaintiff was proceeding on Dumaine Street away from the river toward the lake. The defendant was travelling on Taft Place and approached Dumaine from the plaintiff's left. There is a conflict in *36 the testimony as to whether the defendant obeyed the stop sign at the intersection, or proceeded through it without stopping. In any event the facts are clear that the front of the plaintiff's vehicle struck the defendant's vehicle on its right, rear side. The point of collision was in the plaintiff's lane of traffic near the curb on plaintiff's right.
The defendant testified he stopped in obedience to the stop sign on Taft Place and looked both ways for oncoming traffic before proceeding across Dumaine. He started across at a slow rate of speed and the front end of his vehicle had just cleared the intersection when his car was struck on its right, rear side by the plaintiff's vehicle. He admitted that he did not see plaintiff until the collision occurred.
The plaintiff testified that he first noted the defendant's vehicle when he, the plaintiff, was one or two car lengths from the intersection. He realized that the defendant was faced with a stop sign on Taft Place so he assumed the defendant was going to stop for it. He stated that the defendant did not stop for the sign, however, so he applied his brakes and swerved to his right to avoid striking the defendant's car, but was unsuccessful. When questioned concerning the position of the defendant's car at the time he first observed it, he made these statements:
"Q. Where on Taft Place was his car when you first saw it for the very first time?
"A. He was coming to the stop sign.
"Q. Coming through the stop sign?
"A. That's right.
"Q. In other words, he was partly out in Dumaine Street?
"A. I would say he might be even with it when I seen he wasn't going to stop for the stop sign. He evidently didn't pay any attention to the stop sign, I slammed on my brakes, he did make it half way across the street when I hit him.
"Q. I want to go back to where you were when you first saw him, was he on Dumaine Street when you first saw him?
"A. That I don't remember, I seen the car and I knew I was going to hit him, in other words, he wasn't stoping for the stop sign, so I applied my brakes immediately and then I slammed into him.
"Q. And that was when you were a couple of car lengths away from the intersection?
"A. About one or two car lengths.
"Q. One or two car lengths?
"A. Yes, sir.
"Q. You were one or two car lengths into the intersection and at that time he was running the stop sign?
"A. That's right.
"Q. He ran in front of you and you hit him on the right rear?
"A. I hit him about the middle of his automobile, I smashed in the whole back fender of his car and that stationwagon fender is a pretty long one, you know.
"Q. Let me ask you this.
"A. All right.
"Q. Did you see his automobile anywhere before he got to the stop sign?
"A. No, sir.
"Q. When you first saw him, was part of his car out in Dumaine Street?
"A. I don't remember whether it was or not, I just know we was going *37 to have a collision, I applied my brakes and I couldn't avoid hitting the man."
There is little doubt that under the facts of this case the defendant was guilty of negligence. According to the plaintiff's version of the accident the defendant simply did not obey the stop sign, but proceeded across Dumaine Street directly in front of him. On the other hand, even if the defendant's version of the accident is correct, and he did stop for the stop sign, it is clear he proceeded across the intersection without ascertaining that the way was clear. It is well settled that a motorist must not only stop in obedience to a stop sign, but he is required to see approaching vehicles which he should see on the favored street and to yield to them the right of way. Lucas v. Broussard, 197 So.2d 696, La.App. 4 Cir. 1967; Liverpool & London & Globe Insurance Company v. Taylor, 193 So.2d 840, La.App. 4 Cir.1966; Westchester Fire Insurance Co. v. Dardar, 158 So.2d 239, La.App. 4 Cir. 1963.
The defendant testified that he could see about half a block or more up Dumaine Street before he entered the intersection, but he later testified that a telephone pole and mail box on the corner obstructs the vision of motorists at the stop sign on Taft Place. In any event, it was incumbent upon him to see that the way was clear before he proceeded across the favored street.
We find the language in Messana v. Allstate Insurance Company, La.App., 182 So. 2d 93 applicable in this situation:
"The plaintiff Miss Messana testified that she could see `about half a block or more up the street, without anything blocking [her] vision.' If this is true she should have seen the Cadillac, for obviously it was there and if she didn't see it she was negligent in not doing so. Mahaffey v. State Farm Mut. Auto. Ins. Co., supra [175 So.2d 905, La.App.], McWaters v. Turnage, 156 So.2d 68 (La. App.1st Cir. 1963); Mentel v. Boston Ins. Co., 144 So.2d 441 (La.App. 4th Cir. 1962). We do not believe the Cadillac was traveling at such an excessive speed that it could have traversed a greater distance than plaintiff could see in the short interval of time before the impact. If, on the other hand, plaintiff's view of Memphis Street was so obstructed by parked automobiles or other objects that she could not see the approaching Cadillac, she was under a duty to proceed into the intersection with great caution. Under such conditions, merely stopping before proceeding was not enough. Lawhon v. Town of Homer, supra, 160 So.2d 276, La.App.; Dowden v. Houston Fire & Cas. Ins. Co., supra [81 So.2d 103, La. App.]; Mustin v. West, 46 So.2d 136 (La.App.2d Cir. 1950)." 182 So.2d at 96-97.
The defendant in his answer to this suit in addition to alleging his own freedom from negligence alternatively alleged contributory negligence on the part of the plaintiff. Basically it is his argument that even though he might have been negligent in proceeding across the favored intersection, the plaintiff was likewise negligent in that he saw or should have seen the defendant's vehicle negligently crossing the intersection in time to avoid the collision.
The applicable rule of law is that a motorist on a favored street has the right to assume that any driver approaching the intersection on a less favored street will yield the right of way; however this preference does not relieve the driver travelling on the favored street from the duty of exercising ordinary care of having his car under control and operating it at a reasonable and proper rate of speed while approaching an intersection and while crossing it. When the superior motorist should reasonably realize in time that the inferior traffic will continue its approach and will obstruct the superior motorist's passage across the intersection, he is guilty of negligence should he fail to take every precaution *38 to avoid a collision. Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 (1960), and cases therein cited.
It is not evident from plaintiff's testimony quoted above, where the defendant's vehicle was located on Taft Place at the time the plaintiff first observed it. It is clear however that the defendant had travelled completely across the left lane of Dumaine and in fact the front of his vehicle had cleared the intersection by a few feet when the collision occurred. The defendant testified that Dumaine Street is fifty feet wide at that point. The question then, under these circumstances, is should the plaintiff who is charged with the duty of keeping a proper lookout and keeping his vehicle under control, have noted in time to avoid the collision that defendant was not going to stop for the stop sign and had proceeded into the intersection.
As we appreciate this problem, it is purely one of fact. As noted previously, the matter was tried before a jury which returned a verdict in favor of the defendant. It is too well settled to require citation here that we cannot substitute our findings of fact for that of a jury unless we recognize that the jury was manifestly erroneous in its findings. We simply are unable to find that such error exists herein. The plaintiff was evasive and unresponsive when questioned as to the location of the defendant's vehicle when he first noted it. Considering this with the proven distance the defendant had travelled into the intersection before the collision occurred, we find that there is sufficient evidence for the jury to find that the plaintiff was not keeping a proper lookout in this case, and that his negligence in not doing so prevented him from being able to avoid the collision and thus bars his recovery herein.
For the reasons hereinabove set forth, the judgment appealed from is affirmed, appellant to pay all costs of this appeal.
Affirmed.