PER CURIAM *
Plaintiff Janice Womack sues for personal injuries and property damage sustained in an automobile collision with a vehicle owned by defendant Carl R. Pierson and driven by his twenty-one year old daughter, Ruth N. Pierson, which collision occurred at the intersection of Pocahontas and Madison Streets in the city of Baton Rouge, Louisiana, on January 29, 1973, at approximately 9:40 A.M., on a dry, clear day. The trial court granted judgment in the defendant’s favor on the basis that the collision was the result of plaintiff’s speed rather than defendant’s fault. Plaintiff has appealed, alleging error by the trial judge in holding the testimony of defendant’s non-expert witness as to plaintiff’s exact speed “decisive in the matter.”
Ruth Pierson, the driver of defendant’s automobile testified that prior to the collision she was traveling east on Madison Avenue and had stopped at the stop sign controlling the flow of traffic into Pocahontas Street. After looking both ways and seeing no vehicles she attempted to proceed across the intersection in first or low gear; when she was struck on the left front by a vehicle driven by plaintiff. The *280 investigating officer found that the force of the impact caused the Pierson vehicle to be spun around 180 degrees; while the plaintiff’s vehicle traveled forty (40') feet forward where it struck a tree and then traveled one hundred thirty-four (134') more feet before finally coming to rest. Neither driver saw the other prior to the impact. Although there are some trees on the west side of Pocahontas Street, the photographs filed in evidence reveal that vision is not severely impaired on either street as a result of the trees being there. Plaintiff told the investigating officer that she was proceeding at the rate of twenty (20) miles per hour at the time of the collision, which he did not believe to be true due to the damage caused by the impact and the distance she traveled thereafter. He asked her again how fast she was traveling, and she reiterated twenty (20) miles per hour. Later at the trial she denied this and stated that she was traveling at the rate of twenty-five to thirty (25 to 30) miles per hour, in what was, incidentally a thirty (30) mile per hour zone. Plaintiff did not apply her brakes and left no skid marks. Miss Pierson was ticketed for failure to yield, and Miss Womack did not receive a ticket.
A completely disinterested witness, James Lee McCurley, Jr., twenty-two years old, who lived on the corner of Pocahontas and Madison Streets, stepped out of his house, intending to cross the street immediately prior to the accident. He testified as follows:
. . I started to cross the street and then all of a sudden this car came by about three feet from me and I just looked around real quick to see what it was, you know, that passed me and then I saw the collision and it was a Monte Carlo that hit an oak tree and went down through mud, about four inches of mud, for about a hundred feet after it hit the oak tree and it spun, you know, Miss Pierson’s car around. .
Q. Could you estimate the speed of the Womack vehicle as .

A. It was definitely over the limit and as I told the insurance company I would say it was knocking around fifty miles an hour. She wasn’t just going the limit.
Q. Approximately how far were you from the vehicle when it passed by you?
A. I would say about three or four feet.
Q. Why didn’t you see the vehicle when you looked to the left ?
A. Apparently she was going too fast and she was down the street when I looked to the left.
Q. How far can you look down Pocahontas ? . . .
Q. Looking north now ?
A. Actually if you look behind the tree you can see all the way, you can look to either side of it, there is only one small spot obstructed, but I can see the intersection from that distance.
Q. Approximately how far is that?
A. The intersection ? It is a city block.
Q. Going north about how many feet is that ? . . .
A. No, it is more about three hundred feet, I guess you would say, it is about a normal football field.
Q. And you could see that far and when you looked there you just didn’t see the Womack vehicle ?
A. That’s right. .
Q. When this vehicle ran past you you said it was definitely going over the speed limit?
A. Right.
Q. You also said it was going about fifty miles an hour ?
*281 A. That’s right, I would say at least fifty miles an hour and I told the same thing to the insurance company on a recording.
Q. If you had a car pass you on the street you could give the—
A. I could tell you pretty close what it was doing.
Q. Have you had any training in this?
A. No, I have never had training but I have been to enough races and everything else and I have been around cars all my life, that is my hobby, I work on them.
Q. Are you a race car driver ?
A. No . . .
Q. It was either going fifty or fifty-five miles an hour ?
A. Somewhere around there, right.
Q. And you are not an expert, but you can nail it within five miles an hour?
A. Right, sure can.
Q. When you didn’t see the car until it passed by you ?
A. Yes, but I saw it pass as it went in front of me to the intersection . . .”
(Excerpts from Tr. 59-68)
Dr. Olin K. Dart, a qualified civil engineer, was accepted as an expert by the trial judge. He evaluated the accident from four different avenues of approach. In the avenue most favorable to the plaintiff, he still found that she had to be traveling at a minimum of forty (40) miles per hour at the time of the accident.
The only testimony in rebuttal to defendant’s witnesses was that of the plaintiff herself and of her sister who was a passenger in the automobile at the time of the collision, and certainly not one who was to be considered in the vein of a disinterested witness. Plaintiff’s sister testified that plaintiff was driving twenty-five to thirty (25-30) miles per hour at the time of the collision.
In evaluating the testimony the trial judge opined as follows:
“Finally, the defendants called Dr. Olin Dart, a civil engineer and expert in computations of speeds and distances. Using the following assumptions: 1) That Miss Pierson’s line of sight extended 220 feet down Pochantas Street; 2) That she had stopped 13 feet from the intersection of Pocahontas Street; and 3) That she had accelerated in a conventional manner from her stopped position, Dr. Dart computed Miss Womack’s speed at 42 miles per hour. He said that he used several different methods to calculate her speed and was of the opinion that Miss Womack’s speed was between 40 to 50 miles per hour. While the Court has no reservations regarding Dr. Dart’s qualifications, or the accuracy of his computations, nonetheless, the fallacy of using expert testimony in this fashion is, that as he admitted, a variance in anyone of the assumptions will materially affect the computation of the speed of the Womack automobile.
It is evident that in order to prevail the defendant must show that the plaintiff was driving at such an excessive rate of speed that Ruth Pierson was unable to anticipate that the Womack vehicle would pose a hazard toward her successful negotiation of the intersection. This is so because Janice Womack was traveling on a favored street and Ruth Pierson was not only obligated to stop at the stop sign, but more importantly, obligated to yield to any approaching traffic.
A motorist on a favored street has the right to assume that any driver approaching an intersection on a less favored street will yield the right-of-way; however, this preference does not relieve the driver traveling on the favored street from the duty of exercising ordinary care or having his automobile under control *282 and operating it at a reasonable and proper rate of speed while approaching the intersection, and while crossing it. Roussell v. Strug, La.App., 225 So.2d 34. Also Procell v. Strange, La.App., 203 So.2d 739, writ refused, 251 La. 688, 205 So.2d 606. It is the Court’s opinion that Mr. McCurley’s testimony is decisive in the matter. He was an impartial, unbiased witness who testified without reservation that Janice Womack was driving at a speed well over the speed limit. This, coupled with the fact that the Womack automobile struck the Pierson car with a substantial impact and traveled at a great distance after striking other objects, gives credence to the Court’s ultimate determination that her excessive speed, coupled with a failure to maintain a proper lookout on her part, was a proximate and contributing cause of the accident, thereby barring her claim for damages.”
Under the particular circumstances of this case there is no plausible reason advanced by the plaintiff to justify our holding that the trial court manifestly erred in relying largely upon the testimony of the non-expert witness McCurley. His testimony, quoted extensively above, is very convincing as to his knowledge of automobile speeds and distances. A review of the evidence as a whole, irrespective of the stature of Mr. McCurley’s testimony, amply supports that the plaintiff was con-tributorily negligent in traveling at an excessive rate of speed and failing to keep a proper lookout, and that such negligence, being a proximate and contributing cause of the accident, bars plaintiff’s claim for damages.
Our holding obviates the necessity of passing upon the question of the defendant’s negligence.
For the foregoing reasons the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.

 This opinion was authored by TUCKER, J., prior to his death on the 25th day of January, 1974, and is concurred in by the remaining members of the panel.