345 So.2d 917 (1977)
Joseph MURRAY et al.
v.
Charles T. KUHN et al.
No. 7843.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1977.
*918 Edmond R. Eberle, New Orleans, for plaintiffs-appellants.
Steven F. Griffith, New Orleans, for defendants-appellees.
Before SAMUEL, LEMMON, STOULIG, BOUTALL and BEER, JJ.
STOULIG, Judge.
Plaintiffs, Joseph Murray and Katie Murray, have appealed that portion of a judgment dismissing their respective claims for property damage and personal injury allegedly caused by the negligence of defendant Charles T. Kuhn in losing control of his vehicle and ramming the Murray automobile as it was parked on or partially on[1] the paved shoulder lane of U. S. Highway 61. The trial judge found that the accident occurred through the concurrent negligence of Kuhn in losing control of his car and of Katie Murray in parking where she did.
It is uncontradicted that Katie Murray and her two-year-old daughter Mabylee sat in the parked car on the highway shoulder of the eastbound traffic lane of the Airline Highway near New Sarpy, Louisiana, while two other companions, M. V. Smith and Fernando Murray, fished in a pond alongside the highway. A light drizzle or mist was falling at the time. Without warning to its occupants, the Murray car was struck violently from the rear by the Kuhn automobile and was knocked from the eastbound shoulder across four traffic lanes, the dividing median, and the westbound shoulder before hitting a tree and stopping. Both Katie Murray and her child were thrown from the car as it careened across the highway.
The trial court's conclusion that Kuhn's negligence in losing control of his vehicle was a proximate cause of the accident is amply supported by the evidence. His improbable and contradictory testimony tendered in support of his exculpatory defense of sudden emergency is unimpressive.
*919 As he relates it, he was driving eastward on a rain-soaked highway[2] when two cars traveling ahead of him and abreast of each other suddenly slowed from 65 to 60 miles per hour when they were confronted with a water puddle standing on the highway. He first estimated he was 400 feet behind them when they applied their brakes (presumably simultaneously) and he then braked, slid to the emergency lane where he struck the Murray vehicle. Defendant's wife gave a conflicting version.[3] Then, when Mr. Kuhn was recalled, he testified he was only two car lengths behind the braking vehicles in front of him when their drivers first applied the brakes and created the alleged emergency. It is apparent from the record the accident would not have occurred had Kuhn been observing appropriate cautionary measures under admittedly hazardous circumstances.
We next consider the finding that Katie Murray's parking on the paved highway shoulder was a contributing proximate cause of the accident. The written reasons assigned by the trial court state this predicate for his conclusion:
"Plaintiff driver Katie Murray was negligent. Along the whole stretch of U.S. 61 in this Parish, where the emergency lane exists, numerous signs erected by the Highway Department inform motorists that driving on the emergency lanes is prohibited. R.S. 32:56(B) makes it an offense to refuse or fail to comply with instructions of traffic control devices, and R.S. 32:143[A](14) prohibits the parking of vehicles at any place where official signs prohibit such. When Katie Murray disregarded the signs and not only drove onto the emergency lane, but parked there, she assumed the risk of having the vehicle and herself injured while parked in the prohibited area. This negligence is imputed to Joseph Murray, the owner of the vehicle."
There is no evidence in the record to indicate "no parking" signs were posted at the accident site. The trial judge incorporated as a determining factor something within his stated knowledge; however, it is error to go beyond the evidence in reaching factual conclusions. Nor may the trial judge supply a defense of assumption of risk at the conclusion of the trial if it has not been pleaded. Assumption of risk is an affirmative defense that must be specially pleaded. C.C.P. art. 1005.
Even though it is inappropriate to weigh the trial court's observation about posted signs as part of the evidence, it is appropriate for us to consider whether Katie Murray's parking on the shoulder was a contributing proximate cause of the accident because she must be free from negligence to obtain a reversal on her personal injury claim.
The defense pleadings state Katie Murray was negligent in "parking his [sic] vehicle illegally on the shoulder of U. S. Highway 61." If violation of any statute enacted for the safety of life or limb is a legal cause of the accident, then the violator is guilty of negligence per se even if other causes intervene. Miller Car Washes, Inc. v. Crowe, 245 So.2d 485 (La.App.2d Cir. 1971).
The statutory violations referred to in the reasons for judgment cannot be considered because one applies to traffic controlled by signs (R.S. 32:143, subd. A(14)) and the other to "traffic control devices" (R.S. 32:56(B)). R.S. 32:141(A) prohibits parking in the "main traveled part" of the roadway. Mrs. Murray was either on or partially off the paved shoulder[4] that had at least the same width as the traffic lanes. *920 Her action was not a violation per se of the aforecited statutes. Our attention has not been directed to any statutory declaration that paved highway shoulder lanes are restricted to emergency use. Therefore, the burden devolved upon the defendant to prove that there were posted traffic signs designating this paved lane for emergency use only and that by parking thereon Katie Murray violated R.S. 32:143, subd. A(14). The record is devoid of any evidence bearing upon posted traffic signs in the area.
Nor is there any clear evidence that the Murray vehicle could have been parked farther off the road. The pictorial evidence indicates the roadbed sloped sharply downward at the edge of the shoulder. Were we to conclude plaintiff was negligent per se in parking the vehicle in this area without proof there is an express statutory prohibition of this act, we would, in effect, hold that theories of remote and proximate cause and/or intervening negligence are no longer elements in determining liability.
Turning to quantum, we note Katie Murray incurred neck and back injuries according to Dr. Francis Nicolle. His report, offered in evidence in lieu of his testimony, estimated she would feel discomfort for at least six weeks after the accident. He examined her 12 days after the occurrence and reported objective findings to substantiate her complaints. The medical evidence is uncontradicted. Under the circumstances appellant's request for $1,500 in damages is reasonable.
By agreement of counsel the medical reports, hospital records, x-ray reports and medical expenses were stipulated into evidence. The following statements were rendered in connection with medical treatment of the minor Mabylee: Charity Hospital, $26.60; Drs. Schneider and Heard, $40 (x ray); and Dr. Nicolle, $36. For services rendered in connection with the treatment of Katie Murray, the following charges were incurred: Charity Hospital, $26.60; Drs. Schneider and Heard, $35; and Dr. Nicolle, $36. Plaintiff Katie Murray is entitled to judgment in the sum of $200.20 covering the costs of medical service rendered to her and on behalf of her minor child.
The property damage claim of Joseph Murray is $500, the stipulated book value of his totally demolished car. Charles T. Kuhn in his testimony concedes this value. Joseph Murray's recovery is not contingent on absolving Katie Murray from negligence. He is the owner of the vehicle and there is no evidence his sister was acting as his agent or on a joint venture with him at the time she parked the car. See Washington Fire & Marine Insurance Co. v. Jones, 128 So.2d 687 (La.App. 4th Cir. 1961).
For the reasons assigned the judgment is amended in part; reversed in part; affirmed in part and recast as follows: It is ordered, adjudged and decreed that there be judgment in favor of plaintiff Joseph Murray and against the defendant Charles T. Kuhn in the sum of $500 and in favor of plaintiff Katie Murray and against the defendant Charles T. Kuhn in the sum of $1,700.20. The judgment in favor of plaintiff Katie Murray for and on behalf of her natural child Mabylee Murray and against Charles T. Kuhn in the amount of $300 is affirmed. All awards are to bear interest from the date of judicial demand until paid and all costs of these proceedings are to be borne by the defendant Charles T. Kuhn.
AMENDED IN PART; REVERSED IN PART; AFFIRMED IN PART.
LEMMON, Judge, dissenting and assigning reasons.
I disagree with the majority's conclusion that Katie Murray's parking on the paved shoulder of the high speed highway for an hour, while her brother and friend were fishing in the adjacent canal, was not a concurrent legal cause of this accident.
Tort liability is founded on existence of a duty and a breach of that duty which results in damages. The determination of duty and of civil liability depends on the facts and circumstances of each case. Criminal statutes prohibiting certain acts *921 (such as driving on the wrong side of the road or parking on the highway) may be considered in determining duty and may be applied by analogy in imposing civil liability. But civil liability for a motorist's conduct certainly does not depend exclusively upon whether or not a criminal statute specifically prohibits that conduct.[1] Imposition of civil liability ultimately depends upon a determination of the reasonableness of the defendant's conduct under the circumstances of the particular case.
In the present case there has been no statute or ordinance cited which prohibits parking on the paved shoulder.[2] In order to determine liability we must therefore examine the reasonableness of plaintiff's parking on the paved shoulder in a nonemergency situation.[3]
One purpose of the paved shoulder of modern highways is to provide a wider and more convenient place for emergency parking, thereby enabling and encouraging motorists in disabled vehicles to pull completely off that part of the highway designed for travel. Paved shoulders also provide additional room for maneuvering in the event of a traffic emergency. On the other hand, it can hardly be argued that paved shoulders on high speed highways were provided as a parking place for persons desiring to fish in adjacent canals. Thus, the conduct of a motorist who stops a disabled vehicle on the shoulder must be viewed differently from that of a motorist who stops on the shoulder to fish nearby in determining whether the act of stopping under the facts of the particular case renders the motorist liable (or concurrently liable) for an ensuing collision when another car leaves the highway.
In my opinion it was completely unreasonable for Miss Murray to park as close as she did to the 70-mile per hour traffic traveling on the highway, unless there was a dire reason for doing so.[4] Most importantly, photographs in the record show that there was ample parking area off the paved shoulder and far away from the moving vehicles.
In my opinion she had a duty under the circumstances to park as far off the highway as necessary to reasonably insure safety. Furthermore, in the examination of the duty-risk relationship, there is an ease of association between the risk (that a motorist will veer inattentively from the lane of travel or swerve onto the shoulder in an emergency situation) and the rule of law which would impose a duty to park as far off the highway as possible, according to circumstances, so as to reasonably insure safety.
I would therefore hold that it was encumbent on Miss Murray under the circumstances of this case to park a safe distance off the main traveled portion of the highway and that her failure to do so was a legal cause of the accident. Her recovery of damages should thus be precluded.
BEER, Judge, dissenting.
I respectfully dissent for the reasons assigned by Lemmon, J.
NOTES
[1] Katie Murray testified that the car was parked with its left wheels on the paved portion of the shoulder and its right wheels on the bank of the pond. Defendant maintains that the Murray automobile was parked entirely on the paved shoulder lane. It is of little significance for the purpose of this opinion as to which version we accept.
[2] Defendant testified his speed varied between 60 and 70 miles per hour between one-half mile from the accident site and the point of impact.
[3] Mrs. Kuhn testified that the stream of water was between their car and the two vehicles proceeding in front of them and that when the Kuhn vehicle hit the stream of water her husband lost control of their car.
[4] Plaintiff witnesses testified the left wheels of the car were on the paved shoulder and the right wheels off of it. The defendant driver estimates the Murray car was parked at least 12 inches from the right travel lane, and he first saw it when he was 25 feet from it.
[1] A defendant's violation of a statute is not negligence per se. Weber v. Phoenix Assur. Co. of N.Y., 273 So.2d 30 (La.1973). Furthermore, a statutory violation, depending on the circumstances, does not necessarily result in civil liability. See, for example, Laird v. Travelers Indemn. Co., 263 La. 199, 267 So.2d 714 (1972). On the other hand, civil liability is often imposed because the defendant's conduct was unreasonable under the circumstances, even if no statutory violation was involved.
[2] R.S. 32:141(A)'s prohibition against stopping or parking "upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway" must be considered in historical context as referring on modern highways to lanes designated for travel. (Emphasis supplied)
[3] Miss Murray's parking in that position was clearly a cause in fact of the accident. Had she parked further from the highway, the accident would not have occurred.
[4] If her car was completely on the paved shoulder, as indicated by some testimony, she was within 14 inches to two feet of the high speed traffic. And if she was partially on the unpaved area adjoining the shoulder, she was only that much further away.